IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

KAANAPALI TOURS, LLC,           )    CIVIL 11-00555 LEK-RLP
                                )
          Plaintiff,            )
                                )
     vs.                        )
                                )
STATE OF HAWAII DEPARTMENT OF   )
LAND AND NATURAL RESOURCES,     )
BOARD OF LAND AND NATURAL       )
RESOURCES, ET AL.,              )
                                )
          Defendants.           )
_____  )


**<u>ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT</u>**


          Before the Court are the following motions: (1)

Defendants the State of Hawaii Department of Land and Natural

Resources ("DLNR"), the Board of Land and Natural Resources ("the

Board"), William J. Aila, Jr., in his official capacity as

Chairman of the Board ("Defendant Aila"), Edward R. Underwood, in

his individual and official capacity ("Defendant Underwood"), and

Nicholas Giaconi's, in his individual and official capacity

("Defendant Giaconi", all collectively "Defendants")[1] Motion for

Judgment on the Pleadings and for Summary Judgment ("Motion"),

filed on June 1, 2012 [dkt. no. 45;] and (2) Defendants' Motion

_____

          [1] According to the Complaint, Defendant Underwood is the
Administrator of the DLNR's Division of Boating and Ocean
Recreation ("DOBOR"), which regulates boating facilities and the
recreational use of the State's waters.  Defendant Giaconi is the
Maui District Manager of DOBOR.  [Complaint at ¶¶ 4-5.]

for Summary Judgment as to Individual Defendants Edward R. Underwood and Nicholas Giaconi ("Individual Motion"), filed on September 6, 2012 [dkt. no. 68].

Plaintiff Kaanapali Tours, LLC ("Plaintiff") filed a memorandum in opposition to the Motion on August 27, 2012, and Defendants filed their reply on September 10, 2012.[2] [Dkt. nos. 63, 71.] On November 19, 2012, Plaintiff filed a supplemental memorandum in opposition to the Motion ("Supplemental Memorandum in Opposition") and a memorandum in opposition to the Individual Motion ("Individual Memorandum in Opposition"). [Dkt. nos. 105, 106.] On November 26, 2012, Defendants filed a supplemental memorandum in support of the Motion ("Supplemental Reply"), and a reply in support of the Individual Motion ("Individual Reply"). [Dkt. nos. 114, 113.]

Both motions came on for hearing on December 10, 2012. Appearing on behalf of Plaintiff was Robert Frame, Esq., and Mark Hamilton, Esq., and appearing on behalf of Defendants was Daniel Morris, Esq. After careful consideration of the motions, supporting and opposing memoranda, and the arguments of counsel, the Court HEREBY GRANTS both motions for the reasons set forth

---

[2] Plaintiff's memorandum in opposition to the Motion included a request that the Court deny the Motion as premature pursuant to Fed. R. Civ. P. 56(d). On September 11, 2012, this Court granted in part and denied in part Plaintiff's Rule 56(d) request and continued the September 25, 2012 hearing on the Motion. [Dkt. no. 71.]

below.

## I.  **Background**

The instant case arises from Defendants' allegedly wrongful refusal to allow Plaintiff to substitute vessels on Commercial Use Permit No. M-05 ("the Permit").[3]  The Complaint alleges the following claims: a claim seeking permanent and preliminary injunctive relief preventing Defendants from invalidating the Permit and requiring Defendants to allow Plaintiff to operate the Queen's Treasure under the Permit ("Count I"); denial of due process ("Count II"); a claim for declaratory relief stating that the Permit is valid and that the Queen's Treasure can be added to the inventory of vessels that Plaintiff can operate under the Permit ("Count III"); equitable estoppel ("Count IV"); denial of equal protection ("Count V"); negligence ("Count VI"); and intentional interference with prospective business advantage ("Count VII").

The relevant factual and procedural background in this case is set forth in this Court's March 29, 2012 Order Denying Plaintiff's Motion for Preliminary Injunction ("3/29/12 Order").[4] Kaanapali Tours, LLC v. State of Hawaii Department of Land and

---

[3] There are multiple versions of the Permit, each characterized primarily by a different effective period.  The different versions of the Permit are identified specifically *infra*.

[4] This case was reassigned to this Court on October 7, 2011 [Dkt. no. 11.]

Natural Resources, Board of Land and Natural Resources, et al.,
No. 11-00555, 2012 WL 1080999 (D. Hawai`i March 29, 2012).

## II. **Motion**

In the instant Motion, Defendants argue that Plaintiff
has failed to state a viable due process, equal protection, or
state law claim, there are no genuine issues of material fact,
and Defendants are entitled to judgment as a matter of law and
dismissal of the Complaint. Defendants further argue that
Plaintiff's claims for injunctive and declaratory relief are
moot, as the Permit at issue has expired.

In the Motion, Defendants explain that, as a part of
DLNR's management plan for Hawaii's ocean waters, it has
established ocean recreation management areas ("ORMAs"), one of
which consists of the Kaanapali ocean waters on the west coast of
the island of Maui. Although under federal law DLNR cannot adopt
rules prohibiting the operation of commercial vessels in the
Kaanapali ORMA, DLNR has promulgated rules regulating commercial
activity in the ORMAs. Pursuant to DLNR regulations, only a
limited number of commercial use permits are awarded in the
Kaanapali ORMA, five for monohull vessels and ten for catamarans.
[Mem. In Supp. of Motion at 3 (citing Haw. Admin. R. §§ 13-251-
76(g), 13-251-51, 13-251-52).] According to Defendants, only a
permitted vessel may land on the Kaanapali beach and/or ferry
passengers to and from the Kaanapali beach to the vessel for

4

commercial tours.

Defendants assert that, from April 1, 2011 through March 31, 2012, Plaintiff's Permit allowed it "to operate a *specific* monohull vessel (a 16-foot inflatable dingy named the 'QT') in the Kaanapali ORMA." [Id. at 3-4 (citing Motion, Decl. of Daniel A. Morris ("Morris Decl."), Exh. A ("March 2011 Permit")).] Plaintiff submitted a DOBOR request dated July 26, 2011 for a catamaran permit to operate the sixty-four-foot, thirty-ton "Queen's Treasure" in the Kaanapali ORMA. DOBOR denied the application, and the instant case followed.[5]

The March 2011 Permit states, in pertinent part: "This permit authorizes KAANAPALI TOURS, LLC. (hereinafter referred to as the 'Permittee') to conduct PASSENGER CARRIAGE (49 Pax, Monohull/Multihull). Primary Vessel: 'QT' . . . ." [Morris Decl., Exh. A at 1.] According to Defendants, Plaintiff's position is that this language entitled it "to switch from a small monohull dingy like the QT to a large multihull vessel like the Queen's Treasure, or vice versa, at its insistence." [Mem.

_____

[5] Defendants note that DOBOR did not renew the March 2011 Permit after its expiration, based on Plaintiff's failure to comply with Haw. Rev. Stat. § 200-10, which sets forth minimum revenue requirements. [Morris Decl., Exh. I (letter dated 3/22/12 to Jan Nolan from Defendant Underwood), Exh. K (Pltf.'s Statement of Gross Receipts for various months).] Defendants emphasize that DLNR never restricted Plaintiff's ability to operate the QT in the Kaanapali ORMA under the Permit. [Mem. in Supp. of Motion at 5 (citing Morris Decl., Exh. J (emails dated 7/7/11 between Defendant Underwood and Plaintiff's counsel, Robert Frame, Esq.)).]

in Supp. of Motion at 4.]  The March 2011 Permit expired by its own terms on March 31, 2012.

Defendants point out that, dating back to the 1970s, Kellam Bros., Inc. ("Kellam Bros.") owned the Permit and used it to operate monohull vessels for commercial activities.  Kellam Bros. apparently never operated a catamaran under the Permit.  In 2009, however, it failed to pay necessary permit fees, and it had financial disputes with one of its partners, Kyle Bebee.  DLNR cancelled the Permit in 2009, but Kyle Bebee asked DLNR to make accommodations for him in light of his dispute with Kellam Bros. Kyle Bebee later sold his interest in the Permit to Plaintiff. The "reinstated" Permit was issued to Plaintiff for the catamaran "Alii Nui" in December 2009 ("December 2009 Permit").  [Id. at 6.]

The December 2009 Permit was not signed by the DLNR administrator with the authority to issue permits; it was signed by a low-level planning officer.  Thus, Defendants argue that the December 2009 Permit is ultra vires.  Further, Defendants argue that the transfers from Kyle Bebee ultimately to Plaintiff were completed without the proper notices to, and approval of, DLNR. [Id. at 6-7.]

Defendants note that, in March 2010, Plaintiff sought a revision of the Permit to replace the monohull vessel, the Big Kahuna, as the permitted vessel, but DOBOR never executed the

revised Permit.  [Morris Decl., Exh. H (March 31, 2010 Permit).]

Defendants also point out that Plaintiff never conducted

commercial tours using either the Alii Nui or the Big Kahuna, and

that it is not clear that Plaintiff ever owned either of those

vessels.  Defendants emphasize that the December 2009 Permit

expired and a new permit was issued in March 2011.  The new

permit did not have the M-05 designation.  [Mem. in Supp. of

Motion at 7 & n.7.]


         Defendants argue that neither DLNR rules nor its

regulations allow the unfettered substitution of vessels, and the

Hawai`i Supreme Court has recognized that a ORMA permit issued to

a vessel is impliedly non-transferable.  [Id. (citing Captain

Andy's Sailing, Inc. v. Department of Land and Natural Resources,

113 Hawai`i 184, 195, 150 P.3d 833, 844 (2006)).]  Thus,

Defendants argue that there is no statutory basis for Plaintiff's

due process claim.

         Defendants also contend that there is no factual basis

for Plaintiff's due process claim.  Defendants argue that it was

unreasonable for Plaintiff to assume that it was entitled to

substitute vessels based on irregularities in the history of the

Permit.  Defendants emphasize that, although the Permit refers to

"49 Pax, Monohull/Multihull", it also states that nothing in the

Permit limits the applicable law, and that Plaintiff recognizes

7

that such laws apply to the Permit and to Plaintiff.  [Id. at 14-15 (quoting Morris Decl., Exh. A at ¶ 16).]  Defendants also argue that the Permit "clearly limits operations to the uses specifically allowed therein [i.e. with the listed primary vessel as the QT] and requires that activities or uses not specifically allowed must be requested and approved separately."  [Id. at 15 (Morris Decl., Exh. A at ¶¶ 7,9).]  In light of these terms, Defendants argue that it was unreasonable for Plaintiff to believe that it could freely transfer vessels.

As to Plaintiff's state law tort claims, Defendants argue that Plaintiff's negligence claim fails because Plaintiff cannot establish reasonable reliance, and therefore Plaintiff cannot prove causation.  Further, Defendants argue that Defendants Underwood and Giaconi are non-judicial government officials who were performing their official duties and therefore are entitled to the qualified or conditional privilege identified in Towse v. Atake, 64 Haw. 624, 647 P.2d 696, 702 (1982).  Thus, to prevail against them, Plaintiff must prove actual malice, willfulness, or reckless disregard, by clear and convincing evidence.  Plaintiff has not even alleged malicious or willful conduct.  [Id. at 26-27 (citing Awakuni v. Awana, 115 Hawai`i 126, 165 P.3d 1027, 1041-43 (2007)).]

As to Plaintiff's intentional interference with prospective business advantage claim, Defendants argue that

Plaintiff has not established a sufficient business relationship that has been interfered with, particularly since Plaintiff never operated any vessel under the Permit prior to this litigation. Defendants reiterate that Plaintiff has not established malice to overcome the conditional privilege as to this claim.  Further, the Hawai`i Supreme Court has held that DLNR rules and regulations do not create a private right of action for this type of claim.  [Id. at 28 (citing Whitey's Boat Cruises, Inc. v. Napali-Kauai Boat Charters, Inc., 110 Hawai`i 302, 132 P.3d 1213 (2006)).]

Finally, Defendants argue that Count I, which seeks injunctive relief requiring Defendants to allow Plaintiff to substitute vessels, and Count III, which seeks declaratory relief that the Permit is valid and that the Queen's Treasure can be added to the inventory of covered vessels, are moot because the Permit has expired by its own terms.

### A.   Plaintiff's Memorandum in Opposition

In its Memorandum in Opposition to the Motion, Plaintiff argues that the reissuance/renewal of the Permit is evidence that DLNR accepted and approved of the transfer of Plaintiff to Janice Nolan and Amy Sutherland.  Even if the Permit was issued in error, it was still valid according to DOBOR/DLNR policy.  [Mem. in Opp. at 4 (citing Aff. of Robert G. Frame ("Frame Aff."), Exh. T at 60, 67-68).]

9

In addition, Plaintiff argues that Defendants improperly relied upon Haw. Rev. Stat. § 200-10 to deny the renewal of the March 2011 Permit based on the alleged failure to meet minimum gross receipt requirements.  Plaintiff contends that § 200-10 only applies to small boat harbors and does not apply to the Kaanapali ORMA.  [Id. at 4, 6.]  Plaintiff stresses that it paid its monthly permit fees pursuant to Haw. Admin. R. § 13-256-11(3) and that DLNR accepted those fees.  Further, other permit holders that have had zero receipts have repeatedly been granted permit renewals.  [Id. at 6-7 (citing Decl. of Janice Nolan ("Nolan Decl."); Frame Aff., Exh. G (March 2011 Permit) at ¶¶ 4-5, Exhs. H, I).]

Plaintiff emphasizes that, on December 21, 2009, Defendants obtained the December 2009 Permit with the Alii Nui, a catamaran, as the primary vessel.  The December 2009 Permit included the monohull/multihull language.  [Id. at 4 (citing Frame Aff., Exh. C (December 2009 Permit)).]  Plaintiff also points to a March 12, 2010 letter ("3/12/10 Letter") that DLNR sent Janice Nolan and Amy Sutherland approving the transfer of ownership of Plaintiff.  Plaintiff states that the letter acknowledged that: 1) Plaintiff could use either a monohull or a multihull vessel; 2) the Permit's passenger carriage limit was 115 passengers; and 3) Plaintiff intended to change vessels.  Plaintiff paid a $15,000 transfer fee on March 31, 2010, which

was the amount required for a forty-nine-passenger vessel.  [Id. at 5 (citing Frame Aff., Exhs. D (3/12/10 Letter), E (cancelled check for $15,000.00 transfer fee)).]  Defendants renewed the Permit on April 1, 2010 with the Big Kahuna, a monohull, as the primary vessel and a passenger capacity of forty nine ("April 2010 Permit").  [Id. (citing Frame Aff., Exh. G).]  The March 2011 Permit listed the QT as the primary vessel, but the terms otherwise remained the same.  The QT is a sixteen-foot, monohull, inflatable vessel that can carry approximately six passengers. Plaintiff sought to substitute the Queen's Treasure for the QT in July 2011.  [Frame Aff., Exh. F  (April 2010 Permit), Exh. J (7/26/11 application to substitute the Queen's Treasure for the QT).]  Plaintiff complains that Defendants denied the substitution after the Queen's Treasure was built even though they knew that Plaintiff planned to build a new vessel for substitution on the Permit and even though Defendants had consistently allowed substitutions for other permit holders. [Mem. in Opp. at 6 (citing Nolan Decl.; Frame Aff., Exhs. M-P, Exh. T at 72-73, 75, 79-80).]

Plaintiff also argues that Defendants' reliance on Captain Andy's v. DLNR is misplaced because permits are transferable when the interest in the corporation holding the permit is transferred.  Plaintiff did not seek to transfer the Permit, it only sought to substitute vessels.

Plaintiff argues that it had the right to substitute another vessel for the primary vessel listed on the Permit. Plaintiff argues that there is no statute or rule prohibiting such substitution, and the language and the history of the Permit proves that DLNR interpreted the Permit as allowing for substitution.

Plaintiff clarifies that it does not claim that the 3/12/10 Letter authorized the substitution of the Queen's Treasure for the QT. Plaintiff argues that the letter is the first part of a pattern of actions by DOBOR/DLNR that establishes Plaintiff's right to substitute another vessel for the primary vessel, pursuant to the terms of the Permit. Plaintiff argues that "the history of the Permit, the testimony of Underwood and various documents prove there was a mutual expectation that substitutions of vessels for the primary vessel are freely allowed." [Id. at 24 (citing Frame Aff., Exhs. M-P, Exh. T at 72-73, 75, 79-80).]

Plaintiff argues that, for the same reasons its constitutional claims survive summary judgment, its state law claims survive because Plaintiff reasonably relied, to its detriment, on the Permit's language and on Defendants' practices as proof that Plaintiff had the right to substitute vessels.

As to Defendants' assertion of qualified immunity for the individual defendants, Plaintiff argues that the Complaint

12

alleges that they acted maliciously, willfully, or recklessly in denying Plaintiff's request for substitution, and the issue of whether the privilege applies is an issue of fact for trial.

Finally, Plaintiff argues that its claims for permanent injunctive relief and declaratory relief are not moot because the jury can remedy the harm to Plaintiff by ordering that Defendants renew the Permit and allow the substitution of the Queen's Treasure for the QT.

### B.  **Supplemental Opposition**

In its Supplemental Opposition, Plaintiff notes that the Rule 56(d) continuance allowed the parties to take several depositions, but they were unable to schedule the depositions of Peter Wood, Tom Ueno, and Douglas Smith in time for the preparation of the Supplemental Opposition.  Plaintiff also states that there are other significant discovery issues remaining because of Defendants' evasive discovery responses. Nevertheless, Plaintiff, asserts that the evidence discovered to date proves that Defendants are not entitled to summary judgment. [Suppl. Opp. at 3-4.]

Plaintiff's arguments regarding its due process and equal protection claims are unchanged, nor does there appear to be significant new evidence on these claims.

As to the negligence claim, Plaintiff argues that it has discovered additional evidence.  Defendant Giaconi was

employed by DLNR for twenty years and was a district manager for four years, including during the time that the catamaran the KIELE V dismasted.  Plaintiff asserts that Defendants Underwood and Giaconi were negligent, and possibly grossly negligent, in failing to reissue the permit, even though the permit was available and it has been four years since the incident.  Thus, Defendants' claim that allowing Plaintiff to operate a catamaran under its Permit would have exceeded the number of catamarans authorized in the Kaanapali ORMA is not credible.  [Id. at 9 (citing Suppl. Frame Aff., Exh. 1 (excerpts of trans. of 9/19/12 depo. of Defendant Giaconi) at 5, 12-14, Exh. 2 (7/13/11 email from Defendant Underwood to Heather Alvarado), Exh. 3 (excerpts of trans. of 8/22/11 depo. of Defendant Underwood) at 125).]  Plaintiff argues that Defendants Underwood and Giaconi knew or should have known that Plaintiff had the right to substitute vessels and the right to pay either a $200.00 minimum fee or three percent of its gross revenues.  Plaintiff asserts that Defendants "either negligently failed to enforce the rules equally and/or intentionally harmed Plaintiff."  [Id. at 12-13.]

> C.  **Defendants' Reply**

As an initial matter, Defendants argue that this Court should reject Plaintiff's attempt to assert claims based on the non-renewal of the Permit because Plaintiff never amended the Complaint to include such claims.  [Reply at 1 n.1.]

Further, Defendants argue that Plaintiff's due process claim fails because no statute or rule required DLNR to substitute a catamaran for a monohull under Plaintiff's Permit. Thus, the benefit Plaintiff sought was not mandatory. The fact that nothing in the statutes or rules prohibits the substitution of vessels does not create an affirmative entitlement. Further, the fact that ownership of an entity holding a permit may be transferred does not create a right of substitution.

Defendants argue that, to the extent Plaintiff relied on the monohull/multihull language of the Permit, such reliance was not reasonable because the Permit is clearly subject to state laws and boating rules, and any fraudulently or erroneously issued permit can be suspended or revoked. Defendants argue that Plaintiff has not established a property interest based on historical examples of other permittees being allowed to substitute vessels. None of the examples Plaintiff cited involve circumstances similar to Plaintiff's. Thus, Defendants argue that Plaintiff has not proven a mutual entitlement to substitution. In particular, Defendants emphasize that the 3/12/10 Letter clearly restricted the ability to substitute vessels, and Defendants never waived the future application of administrative rules. [Id. at 3-4.] Even assuming, *arguendo*, that there were similar renewals, Defendants argue this did not create a property interest merely because a discretionary

privilege was granted in the past. [<u>Id.</u> at 4-5 (citing <u>Conn. Bd.</u> <u>of Pardons v. Dumschat</u>, 452 U.S. 458, 465 (1981); <u>Doran v. Houle</u>, 721 F.2d 1182, 1186 (9th Cir. 1983)).]

Defendants also argue that Plaintiff's equal protection claim fails. Plaintiff points to other permittees that were allowed to substitute vessels or that benefitted from lenient interpretations of the gross receipt requirements but, even if those benefits should not have been granted, they do not give rise to an equal protection claim. Plaintiff has not established the requisite factual similarity between those incidents and Plaintiff's to prove an equal protection claim. [<u>Id.</u> at 6-7 (discussing <u>Seven Star Inc. v. United States</u>, 873 F.2d 225, 227 (9th Cir. 1989)).] Further, if Plaintiff's Permit was renewed in the past in spite of non-compliance with the Hawai`i Administrative Rules, it was issued in error and thus subject to revocation. [<u>Id.</u> at 8 (citing Haw. Admin. R. § 13-251-49(a)).]

Defendants also argue that Plaintiff's state law claims fail as a matter of law because Plaintiff cannot establish reasonable reliance. Without the detrimental reliance necessary to prove causation, Plaintiff cannot establish either negligence or intentional interference with prospective business advantage. [<u>Id.</u> at 11-12 (citing <u>Cho v. Hawaii</u>, 115 Hawai`i 373, 379 n.11, 168 P.3d 17, 23 n.11 (2007); <u>Hawaii Med. Ass'n v. Hawaii Med.</u> <u>Serv. Ass'n, Inc.</u>, 113 Hawai`i 77, 116, 148 P.3d 1179, 1218

(2006)).]

Finally, Defendants reiterate that Plaintiff's equitable claims are moot because Plaintiff's Permit expired by its own terms.  Although Plaintiff argues that this Court can order the reinstatement of the Permit and the substitution of vessels, Plaintiff never sought leave to amend its Complaint on this basis.  Defendants contend that Plaintiff's request is thus beyond the scope of this action.  [Id. at 12-13.]

### D.   **Supplemental Reply**

In the Supplemental Reply, Defendants argue that none of the additional discovery obtained during the Rule 56(d) continuance warrants denial of the Motion.

## III. **Individual Motion**

Defendants argue in the Individual Motion that Plaintiff's case is based entirely upon a May 26, 2011 letter, signed by Defendant Underwood, which Plaintiff claims threatened to revoke the Permit, and an August 3, 2011 letter, signed by Defendant Underwood, notifying Plaintiff that it would not be able to switch vessels.  Defendants reiterate, however, that they never revoked the Permit and that the March 2011 Permit expired on its own terms on March 31, 2012.

Defendants state that it is not clear which of Plaintiff's claims are being asserted against Defendant Underwood

and Defendant Giaconi (collectively "Individual Defendants"), and Plaintiff has not specified what the Individual Defendants did or how those actions support Plaintiff's claims for monetary damages.  Defendants emphasize that Defendant Giaconi did not sign either of the letters at issue.  In fact, there is no evidence showing that he is responsible for any of Plaintiff's alleged damages.  Further, the denial of the substitution of vessels and even the alleged threat to revoke the Permit do not establish malice or intent to deprive Plaintiff of a well-established constitutional right.  Defendants therefore assert that the Individual Defendants have qualified immunity.

   A.   **Individual Memorandum in Opposition**

        Plaintiff argues that the Individual Defendants are not entitled to qualified immunity for Plaintiff's § 1983 claims. Plaintiff argues that its allegations in this case, viewed in the light most favorable to Plaintiff, show that the Individual Defendants violated Plaintiff's constitutional rights.  Further, Plaintiff argues that its due process rights were clearly established at the time of the Individual Defendants' actions. Plaintiff had a clear property interest, and Defendants did not afford it any process before taking away the right to substitute vessels and before refusing to renew the Permit at all.

        As to Plaintiff's equal protection claim, Plaintiff argues that the Individual Defendants violated Plaintiff's equal

protection rights because they had no discretion to deny
substitution of vessels according to the terms of the affected
permits.  Plaintiff argues it had a clearly established right to
substitution and the Individual Defendants' denial of that right
was discriminatory against Plaintiff.  Further, the Individual
Defendants had no reasonable or rational basis for the
discrimination.

**DISCUSSION**

**I.  Injunctive Relief (Count I), Declaratory Relief (Count III), and Equitable Estoppel (Count IV) Claims**

As an initial matter, this Court FINDS that Plaintiff's
claims for prospective injunctive, declaratory, and equitable
relief (Counts I, III, and IV) are MOOT.

Mootness is a grounds to dismiss an action at any time.
Hill v. Blind Indus. & Servs. of Maryland, 179 F.3d 754, 757 (9th
Cir. 1999).  In determining whether a request for an injunction
is moot, "the question is not whether the precise relief sought
at the time the application for an injunction was filed is still
available."  Or. Natural Res. Council v. U.S. Bureau of Land
Management, 470 F.3d 818, 820-21 (9th Cir. 2006) (citations
omitted).  Rather, "[t]he question is whether there can be any
effective relief."  Id. (quoting Gordon, 849 F.2d at 1244-45 (9th
Cir. 1988)); see also KAHEA v. Nat'l Marine Fisheries Serv.,
Civil No. 11-00474 SOM-KSC, 2012 WL 1537442, at *4-5 (D. Hawai`i
Apr. 27, 2012).

Here, Plaintiff seeks (1) a permanent injunction prohibiting Defendants from invalidating the Permit and ordering Defendants to transfer the Queen's Treasure to the Permit; (2) a declaratory judgment that the Permit is valid and that the Queen's Treasure can be added to the vessel inventory of the Permit; and (3) an order estopping Defendants from denying the validity of the Permit and Plaintiff's ability to transfer a multihull catamaran to the Permit.  Importantly, however, the Permit that is the subject of all of Plaintiff's requests expired by its own terms on March 31, 2012.  [Mem. in Opp., Aff. of Robert G. Frame ("Frame Aff."), Exh. K.]  Because the Permit has expired, this Court cannot grant the relief Plaintiff seeks.

The Permit was not renewed after it expired, and Plaintiff made no allegations related to this non-renewal in the Complaint.  Indeed, although Plaintiff argues that this Court can order the reinstatement of the Permit and the substitution of vessels, Plaintiff never sought leave to amend its Complaint on this basis.  As such, Plaintiff's request is beyond the scope of this action.  The Court notes, however, that Plaintiff does not appear to be precluded at this point from filing any such claims in a separate action.

The Court therefore GRANTS Defendants' motions with respect to Plaintiff's request for injunctive, declaratory, and equitable relief and DISMISSES AS MOOT Counts I, III, and IV.

## II.  Due Process (Count II) and Equal Protection (Count V) Claims

As to Plaintiff's § 1983 claims against the Individual Defendants, this Court FINDS that the Individual Defendants are entitled to qualified immunity.

Qualified immunity shields government officials from liability for civil damages so long as their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Pearson v. Callahan, 555 U.S. 223, 231 (2009).  The doctrine will not protect the "plainly incompetent" or those "who knowingly violate the law." Preschooler II v. Clark Cnty. Sch. Bd. of Trustees, 479 F.3d 1175, 1180 (9th Cir. 2007) (quoting Hunter v. Bryant, 502 U.S. 224 (1991)).

The Supreme Court has set forth a two-pronged test for determining whether government officials are entitled to qualified immunity.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  The first prong asks "whether, taken in the light most favorable to the party asserting the injury, that party has established a violation of a federal right." Preschooler II, 479 F.3d 1175, 1180 (9th Cir. 2007) (citing Saucier, 533 U.S. at 201).  The second prong asks whether this right was clearly established at the time of the alleged misconduct.  Saucier, 533 U.S. at 201.

21

A right is "clearly established" if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Wilson v. Layne, 526 U.S. 603, 614-15 (1999) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The plaintiff bears the burden of showing that the right he or she claims was violated was a clearly established right. Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002). If the plaintiff meets this burden, the burden shifts to the defendant to demonstrate that the defendant reasonably believed the alleged conduct was lawful. Trevino v. Gates, 99 F.3d 911, 916-17 (9th Cir. 1996).

The Ninth Circuit has stated that "an officer who acts in reliance on a duly-enacted statute or ordinance is ordinarily entitled to qualified immunity." Grossman v. City of Portland, 33 F.3d 1200, 1209-10 (9th Cir. 1994). Whether an act is a violation of a federal right and whether the right was clearly established at the time of the violation are pure legal questions for the court. See Martinez v. Stanford, 323 F.3d 1178, 1183 (9th Cir. 2003).

Here, even viewing the facts in the light most favorable to Plaintiff, the Court finds no evidence that the Individual Defendants were "plainly incompetent" or "knowingly violate[d] the law." Preschooler II, 479 F.3d at 1180 (quoting Hunter v. Bryant, 502 U.S. 224 (1991)). While the Individual

Defendants may have been sloppy, confusing, unpleasant, and lacking in the execution of their duties, Plaintiff has failed to allege any facts demonstrating that the Individual Defendants based their decisions on anything other than a reasonable interpretation of the applicable law and regulations.  Based on the record, the Individual Defendants could have reasonably believed that their conduct with respect to the Permit did not violate a clearly established constitutional right.  As such, the Court GRANTS Defendants' motions as to Counts II and V.

**III.** **State Law Negligence (Count VI) and Intentional Interference with Prospective Business Advantage (Count VII) Claims**

As to Plaintiff's state law claims against the Individual Defendants, this Court FINDS that the Individual Defendants are entitled to the qualified or conditional privilege.

Hawai`i law provides that a nonjudicial government official has a qualified or conditional privilege with respect to his or her tortious actions taken in the performance of his or her public duty.  Towse v. State of Hawai`i, 64 Haw. 624, 630, 647 P.2d 696, 702 (1982); Runnels v. Okamoto, 56 Haw. 1, 4, 525 P.2d 1125, 1128 (1974).  This privilege shields all but the most guilty nonjudicial officials from liability, but not from the imposition of a suit itself.  Towse, 64 Haw. at 630, 647 P.2d at 702.

To overcome the qualified/conditional privilege, the

23

plaintiff must allege and demonstrate by clear and convincing proof that the official was motivated by malice and not by an otherwise proper purpose.  <u>Towse</u>, 64 Haw. at 630-31, 647 P.2d at 702-03; <u>Medeiros v. Kondo</u>, 55 Haw. 499, 504, 522 P.2d 1269, 1272 (1974).  When a public official is motivated by malice, and not by an otherwise proper purpose, Hawai`i law provides that the cloak of immunity is lost and the official must defend the suit the same as any other defendant.  <u>Marshall v. Univ. of Haw.</u>, 9 Haw. App. 21, 35-36, 821 P.2d 937, 946 (Haw. Ct. App. 1991), *abrogated on other grounds by* <u>Hac v. Univ. of Haw.</u>, 102 Hawai`i 92, 73 P.3d 46 (2003).

The Supreme Court of Hawai`i has held that "the phrase 'malicious or improper purpose' should be defined in its ordinary and usual sense."  <u>Awakuni v. Awana</u>, 115 Hawaii 126, 141, 165 P.3d 1027, 1042 (2007).  In <u>Awakuni</u>, the Supreme Court relied on *Black's Law Dictionary*, which defines "malicious" as "'[s]ubstantially certain to cause injury' and '[w]ithout just cause or excuse'"; and defines "malice" as "'[t]he intent, without justification or excuse, to commit a wrongful act[,]' 'reckless disregard of the law or of a person's legal rights[,]' and '[i]ll will; wickedness of heart.'"  <u>Id.</u> (quoting *Black's Law Dictionary* 976-77 (8th ed. 2004)).

Here, the Court finds that Plaintiff has neither alleged nor provided any evidence demonstrating that the

Individual Defendants acted with malice or an otherwise improper purpose.  As such, this Court FINDS that the Individual Defendants are entitled to the qualified or conditional privilege and thus GRANTS Defendants' motions as to Counts VI and VII.

### CONCLUSION

On the basis of the foregoing, Defendants' Motion for Judgment on the Pleadings and for Summary Judgment, filed on June 1, 2012, and Defendants' Motion for Summary Judgment as to Individual Defendants Edward R. Underwood and Nicholas Giaconi, filed on September 6, 2012, are HEREBY GRANTED and this Court HEREBY DISMISSES all of Plaintiff's claims.  The Court DIRECTS the Clerk's Office to close the case.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 16, 2013.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**KAANAPALI TOURS, LLC V. STATE OF HAWAI`I DEPARTMENT OF LAND AND NATURAL RESOURCES, ET AL; CIVIL NO. 11-00555 LEK-RLP; ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**